UNITED STATES of America,
Plaintiff–Appellee,

v.

Pieter VAN DEN BERG,
Defendant–Appellant.

No. 92–10533.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 11, 1993.

Decided Sept. 23, 1993.

Daniel Barton (argued), Susan J. Wolfe (on briefs), Nolan & Armstrong, Palo Alto, CA, for defendant-appellant.

Ross W. Nadel, Asst. U.S. Atty., San Francisco, CA, for plaintiff-appellee.

Before REINHARDT and LEAVY, Circuit Judges, and MERHIGE *, District Judge.

REINHARDT, Circuit Judge:

Having entered a conditional plea of guilty to violating the Anti–Apartheid Act, Pieter van den Berg appeals the denial of his motion to dismiss the prosecution on the ground of abatement. Because we conclude that the General Savings Statute applies to the Act, we affirm.

## I. Facts and Proceedings

Over President Reagan's veto, Congress passed the Comprehensive Anti–Apartheid Act of 1986, codified at 22 U.S.C. section 5001 et seq. The Act established United States policy regarding South Africa and imposed significant sanctions against its white minority government. Violations of the sanctions provisions could lead to either civil or criminal liability. 22 U.S.C. § 5113(b). Congress provided that the subchapter imposing the sanctions (Title III) would automatically "terminate" if the South African government took five steps towards democratization.[1] § 5061(a).

On February 15, 1991 van den Berg was indicted on two counts of importing onion seeds in violation of Title III of the Act, 22 U.S.C. section 5069(1), and one count of conspiracy to violate the Act. On July 10, 1991, while the prosecution was pending, President Bush signed Executive Order 12769, which declared that the government of South Africa had met the five conditions imposed by Congress and that the sanctions were, as of that date, terminated. Soon thereafter van den Berg filed a motion to dismiss the indictment, arguing that the termination of Title III had abated all pending prosecutions. The district judge denied the motion on the ground that the prosecution had been preserved by the General Savings Statute, 1 U.S.C. section 109.

Several months later, in accordance with Fed.R.Crim.P. 11(a)(2), van den Berg entered a conditional plea of guilty to one count of illegal importation of onion seeds, reserving his right to appeal the denial of his motion to dismiss. He was sentenced to three years probation and community service, and fined. The two remaining counts of the indictment were dismissed. Van den Berg then filed this timely appeal of the

---

* Honorable Robert R. Merhige, Senior United States District Judge, Eastern District of Virginia, sitting by designation.

1. The steps were 1) freeing Nelson Mandela and other political prisoners; 2) lifting the state of emergency; 3) unbanning [sic] democratic political parties; 4) repealing certain other apartheid-related acts; and 5) agreeing to negotiate with representatives of the black majority.

denial of his motion to dismiss. Because the issue presented in this case is one of statutory construction, our review is *de novo*.

## II. *Discussion*

 It is well established that when a statute is repealed or otherwise becomes inoperative no further enforcement proceedings can take place unless "competent authority" has kept the statute alive for that purpose. *Pipefitters Local Union No. 562 v. United States,* 407 U.S. 385, 432, 92 S.Ct. 2247, 2273, 33 L.Ed.2d 11 (1972). The issue before us is whether Title III of the Anti-Apartheid Act has been so maintained. The primary dispute between the parties is whether the General Savings Statute, 1 U.S.C. section 109, applies. The statute provides:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability. *The expiration of a temporary statute* shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute unless the temporary statute shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability. (emphasis added)

The specific question we must answer is whether Title III was a "temporary statute" within the meaning of section 109. Another way of putting the issue is to ask whether the General Savings Statute is intended to be all-encompassing.

Section 109 is derived from Revised Statutes section 13, 16 Stat. 432, which was passed in 1871 to alter the common law rule that the repeal or reenactment of a statute abates all pending prosecutions. *Warden v. Marrero,* 417 U.S. 653, 660, 94 S.Ct. 2532, 2536, 41 L.Ed.2d 383 (1974). As originally enacted, the General Savings Statute pre-

vented abatement only with regard to repealed statutes. Ordinarily, the statutes that Congress repealed were permanent statutes—ones not scheduled to expire or terminate on the happening of any event or any established date. Thus, from a practical standpoint, the anti-abatement provision applied to permanent statutes exclusively.

In 1943 then-Attorney General Biddle, recognizing the shortcomings of the General Savings Statute, wrote to the Speaker of the House of Representatives requesting legislation to deal with abatement in the context of a statute "that expires by its own terms." H.R.Rep. No. 261, 78th Cong. 1st Sess. 1 (1943). The suggested amendment was enacted "to make applicable to violations of temporary statutes the same rule that is now in effect with respect to offenses against statutes that have been repealed." *Id.* Thus, after the 1944 amendments, the General Savings Statute prevented abatement with regard to both "repealed" and "expired" statutes. In other words, the post-amendment statute covered both "permanent" and "temporary" legislation.

 Unfortunately, Congress did not see fit to provide a definition for the phrase "temporary statute". When a term is not defined by a statute, it is to be construed in accord with its ordinary or natural meaning. *Smith v. United States,* —— U.S. ——, ——, 113 S.Ct. 2050, 2054, 124 L.Ed.2d 138 (1993). Van den Berg argues that Title III was not a "temporary statute" because it did not have a *definite* end date. He points out that the South African government might never have fulfilled the conditions imposed by Congress and the sanctions might thus have become permanent. He also argues that the language of section 109 demonstrates that temporary statutes "expire" and that by providing that Title III of the Anti-Apartheid Act would "terminate" Congress intended it to fall within a different class of statute. He urges that Title III was an "indefinite" or "conditional" provision rather than a "temporary" one. The government responds that Title III was a "temporary statute" because it was intended to last only for a limited time—until certain conditions were met. The government also contends that there is

no difference between a statute that "expires" and one that "terminates". Implicit in the government's argument is the view that there are only permanent and temporary statutes, and that there is no third class of statutes, called "indefinite" or "conditional".[2]

As an initial matter, we reject van den Berg's argument that a temporary statute "expires" rather than "terminates". On several occasions Congress has provided for the "termination" of a statute that would be classified as "temporary" even under van den Berg's definition—one that becomes inoperative on a specific date. *E.g.,* The Emergency Price Control Act of 1942, 56 Stat. 23, 24; The Veterans' Emergency Housing Act of 1946, 60 Stat. 207, 208. Moreover, case law discussing the end dates of "temporary statutes" often uses "terminated" and "expired" interchangeably. *See, e.g., Allen v. Grand Central Aircraft Co.,* 347 U.S. 535, 542 n. 7, 549 n. 16, 553–55, 74 S.Ct. 745, 749 n. 7, 753 n. 16, 755–57, 98 L.Ed. 933 (1954); *Stillman v. United States,* 177 F.2d 607, 612, 613 & n. 5 (9th Cir.1949). Thus, we find no significance to Congress' use of one term rather than another in the Anti–Apartheid Act.

We next consider van den Berg's argument that Title III represents a third category of statutes: one that is neither "temporary" nor "permanent". He correctly notes that Title III differs in one important respect from every other statute that has been held to be "temporary" within the meaning of section 109. Every decision cited to us, or of which we are otherwise aware, involves a law that contained a specific date on which the statute was set to "expire" or "terminate".[3] Although Congress has in certain instances provided that "temporary statutes" would

terminate *before* a given date if certain conditions were fulfilled,[4] Congress also established an expiration date in those statutes, beyond which the legislation could not continue in effect. Thus, there was simply no possibility that the acts in question could have remained in effect indefinitely. Accordingly, the critical question is whether a statute, like Title III of the Anti–Apartheid Act, that is designed to become inoperative *only* upon the happening of conditions that may never occur is a "temporary statute" for purposes of the General Savings Statute.[5]

▆ In interpreting a statutory provision we must begin with its language. *Pennsylvania Public Welfare Dept. v. Davenport,* 495 U.S. 552, 557, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990). In attempting to define the term "temporary statute" both parties rely heavily upon *Black's Law Dictionary* 1411, 1464 (6th ed. 1990). There, "temporary" is defined as:

> That which is to last for a limited time only, as distinguished from that which is perpetual, or indefinite, in its duration. Opposite of permanent. Thus, temporary alimony is granted for the support of the wife pending the action for divorce; a temporary receiver is one appointed to take charge of property until a hearing is had and an adjudication made.

According to *Black's* a "temporary statute" is

> [o]ne which is limited in its duration at the time of its enactment. It continues in force until the time of its limitation has expired, unless sooner repealed. A statute which by reason of its nature has only a single and temporary operation—*e.g.* an

---

**2.** We note that Title III is not a *statute* but rather just one subchapter of an act that in most other respects was designed to be permanent. Although neither party raises the issue, we see no reason why we cannot examine the various titles of a statute separately when determining whether and to what extent the provisions of section 109 are applicable to them. However, in view of our conclusion that that section applies to all statutes except in extremely limited circumstances, the method of its application is unlikely to make any practical difference.

**3.** *E.g. United States v. Carter,* 171 F.2d 530, 532 (5th Cir.1948); *United States v. Empire*

*Gas Corp.,* 547 F.2d 1147, 1154–56 (Temp.Emer. Ct.App.), *cert. denied,* 430 U.S. 915, 97 S.Ct. 1326, 51 L.Ed.2d 592 (1977); *United States v. Uni Oil Co.,* 710 F.2d 1078, 1083 (5th Cir.1983); *Barker v. Chesapeake & Ohio R.R.,* 959 F.2d 1361, 1367–68 (6th Cir.1992).

**4.** For example, the Emergency Price Control Act 1942 was designed to terminate on a specified date unless hostilities had ended earlier.

**5.** The government concedes that Title III was not "repealed" and that the first sentence of section 109—the sentence that pertains to the repeal of a permanent statute—does not apply.

appropriation bill—is also called a temporary statute.

Title III would appear to fall within *Black's* definition of a "temporary statute" because, at the time of the subchapter's enactment, limitations were placed upon the length of its operation. However, we note that *Black's* somewhat inconsistently contrasts "temporary" with "indefinite". As van den Berg contends, Title III had no *definite* termination date and its operation could be considered "indefinite" as opposed to "temporary".[6] All and all, we cannot say that the term "temporary statute", as used in section 109, is so clear as to avoid ambiguity. Standing alone, it does not definitively resolve the question whether Title III is subject to the General Savings Statute.

■ Because there is no plain meaning of "temporary statute" that is dispositive of the disagreement between the parties, we move on to a consideration of the statute as a whole, its history, and its purposes. *Mt. Graham Red Squirrel v. Madigan,* 954 F.2d 1441, 1452 (9th Cir.1992). Where other statutory tools are not determinative, legislative statements, particularly committee reports, can be helpful in determining statutory meaning and, therefore, Congressional intent. *Id.* at 1453.

■ The "temporary statute" provision is one half of the General Savings Statute. Applying the appropriate techniques of statutory construction, we conclude that taken as a whole section 109 constitutes a comprehensive anti-abatement statute that embodies a Congressional policy of "antipathy" to "amnesty" by "inadverten[ce]". *See United States v. Uni Oil Co.,* 710 F.2d 1078, 1083 n. 3 (5th Cir.1983) (*Uni Oil II*). The section permits exceptions to abatement only when

Congress expressly creates them, except in extremely limited circumstances.[7] The clear *raison d'etre* of the General Savings Statute is to keep extinguished statutes alive for the purpose of permitting prosecutions or enforcement actions relating to conduct that occurred prior to their date of repeal or expiration. *See De la Rama S.S. Co. v. United States,* 344 U.S. 386, 389, 73 S.Ct. 381, 383, 97 L.Ed. 422 (1953). We can conceive of no reason why Congress would provide for the inconsistent treatment of statutes that terminate by the fulfillment of certain conditions and those that terminate by the passing of a specified date; nor can we imagine why Congress would want to exclude "indefinite" statutes from the general operation of what is otherwise an all-encompassing law.

We find van den Berg's arguments in support of such a Congressional design unpersuasive. Van den Berg contends that Congress subjected "temporary statutes" to section 109 because their end-dates are known. He theorizes that otherwise as a statute's expiration date approached people would commit violations knowing that any prosecution could not be consummated in time. In contrast, van den Berg claims, no one would ever know when an "indefinite statute" would terminate, so no similar enforcement problem would occur. Therefore, according to van den Berg, Congress reasoned that the provision of section 109 would not be necessary with respect to "indefinite statutes".

We see at least two flaws in van Den Berg's argument. First, it presumes that in the case of "indefinite" statutes like Title III would-be violators could not create the enforcement problem he fears. This is clearly incorrect. Based on the developing situation in South Africa, a politically astute individual

6. We also note that the word "indefinite" has at least two different meanings. It can refer to something having a) no exact limits or b) no limits at all. *Webster's New World Dictionary, Third College Edition* (1988). Title III was "indefinite" in the former but not in the latter sense.

7. The only true exception to section 109 is the "right for a crime" doctrine set forth in *Hamm v. City of Rock Hill,* 379 U.S. 306, 314, 85 S.Ct. 384, 390, 13 L.Ed.2d 300 (1964), discussed *infra*

at pp. 444–45. However, section 109 on its face applies only to statutes that become inoperative because of legislative action. It is inapplicable where the legal basis for a statute is eliminated either by constitutional amendment, *see United States v. Chambers,* 291 U.S. 217, 223, 54 S.Ct. 434, 435, 78 L.Ed. 763 (1933) (see *infra*), or judicial decision, *see United States v. United States Coin & Currency,* 401 U.S. 715, 740, 91 S.Ct. 1041, 1054, 28 L.Ed.2d 434 (1971) (White, J., dissenting). Moreover, when a statute that is *purely* jurisdictional is repealed or expires, sec-

could well have concluded that the conditions for the termination of the sanctions would be met by the time he would be prosecuted. In the absence of an anti-abatement rule, such an individual could have opted to take a chance on violating the statute, if escaping punishment were his primary concern. In short, the same theoretical enforcement problem could be present in the case of "indefinite statutes" just as in the case of all other non-permanent statutes. Second, van Den Berg's argument does not explain why "indefinite statutes" would be more subject to the dangers he posits than would permanent statutes. There is no reason to assume that there will be greater advance notice that a permanent statute will be repealed than that the conditions necessary to the expiration of an "indefinite" statute will be met. The enforcement problems van den Berg describes would be as likely to arise with "indefinite statutes" as with permanent ones. Yet, permanent statutes have been subject to the General Savings Statute for more than a century. We find no logical basis in van den Berg's arguments as to why Congress would have wanted to treat "indefinite statutes" any differently from permanent legislation.

The legislative history underlying the temporary statute provision, though sparse, does not support the view that Congress intended to draw a distinction between statutes set to expire on a specific date and those that terminate upon the happening of a particular occurrence. Rather that history, like the statutory language and purpose, strongly suggests the contrary—that Congress intended to enact an all-encompassing statute. The House Report, quoted above, indicates that the objective of the amendments to the General Savings Statute was to close the gap in the savings provision. The report reveals that Congress was concerned that legislation enacted for only a limited time would not fall within the existing statute. By specifically stating that expired temporary laws were to be treated in an identical manner as those

that were repealed, Congress indicated an intent to subject to the General Savings Statute all legislation that becomes inoperative upon the occurrence of any legislatively established conditions, whether the passage of time or otherwise.

Van den Berg's analogy to and reliance upon *United States v. Chambers*, 291 U.S. 217, 223, 54 S.Ct. 434, 435, 78 L.Ed. 763 (1933), is misplaced. *Chambers* held that the General Savings Statute did not allow prosecutions for Volstead Act violations after the enactment of the 21st Amendment. The Court first noted that the savings statute was inapplicable because the National Prohibition Act had not been *repealed* by an act of Congress.[8] *Id.* at 224, 54 S.Ct. at 435. Rather, the People had by constitutional enactment stripped Congress of its authority to make Prohibition violations criminal. *Id.* at 224, 54 S.Ct. at 435, 435–36. The justices then concluded that because Congress no longer had the power to punish the conduct at issue, any pending prosecutions abated and Congress could not constitutionally apply the General Savings Statute to keep the prosecutions under the invalidated Act alive. *Id.* at 225, 54 S.Ct. at 436. That analysis has no application here.

*Hamm v. City of Rock Hill*, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300 (1964), is somewhat closer to the present situation but also clearly distinguishable. There, the Court reasoned that section 109 would not allow for prosecutions, after passage of Title II of the 1964 Civil Rights Act, of African–American sit-in demonstrators for pre-Act violations of trespass laws. *Id.* at 314–15, 85 S.Ct. at 390–91.[9] The Court ruled that a right—specifically, equal access to public accommodations—had been substituted for a crime. *Id.* at 314, 85 S.Ct. at 390. As the Court noted in *Hamm*, when Congress passed the Civil Rights Act of 1964 to eliminate 200 years of American racial segregation, it demonstrated its desire to "obliterate a distressing chapter of our history" and, therefore, intended to

---

tion 109 does not apply. *De La Rama S.S. Co. v. United States*, 344 U.S. 386, 390, 73 S.Ct. 381, 383, 97 L.Ed. 422 (1953).

8. As noted earlier, until 1944 the General Savings Statutes covered only the *repeal* of permanent statutes.

9. The case actually before the Court concerned prosecutions under state trespass laws. However, the majority analyzed the issue as if it had arisen under federal law and then concluded that the fact state law was involved was "a distinction without a difference." 379 U.S. at 314, 85 S.Ct. at 390.

prevent continuation of racially motivated trespass prosecutions. 379 U.S. at 315–16, 85 S.Ct. at 391–92.

In contrast, the present case is not one in which Congress has repudiated the merits of a prior public policy. Title III was designed to bring about changes to South Africa's internal policies. The sanctions were terminated only after President Bush determined that they had succeeded. Van den Berg may well be correct that Congress intended to encourage investment in South Africa *after* the lifting of the sanctions. However, there is simply no reason to think that it intended to give amnesty to persons who had violated the sanctions *while* they were in effect and thus helped to prolong the reason for their existence. The *Hamm* rationale in favor of abatement is inapplicable here.

### III. *Conclusion*

█ We hold that for purposes of the General Savings Statute there are only two classes of statutes: temporary ones and permanent ones. "Indefinite statutes" or "conditional statutes", to the extent that such labels are useful, are simply a subgroup of the first class. We further hold that section 109 represents a clear and consistent Congressional policy against abatement, subject only to extremely limited exceptions. Finally, we hold that Congress intended Title III of the Comprehensive Anti–Apartheid Act to be a "temporary statute" for the purposes of the General Savings Statute.[10] Indeed, Congress enacted Title III with the hope that it would be of short duration and that South Africa would act quickly to take the five steps that would cause the sanction provisions to terminate. Accordingly, the order denying the motion to dismiss and the judgment of conviction are

**AFFIRMED.**

10. Because we hold that the General Savings Statute preserved the prosecution against van-den Berg, we need not address the government's alternative argument that he could have been prosecuted for violations of the regulations interpreting Title III assuming the statute had abated.